**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| A.P. Bell Fish Company, Inc., et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Hon. Timothy J. Kelly |
| | ) | |
| Gina Raimondo, in her official capacity as | ) | |
| Secretary of the United States Department of | ) | No. 1:22-cv-01260-TJK |
| Commerce, et al., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| State of Louisiana, et al., | ) | |
| | ) | |
| Intervenor-Defendants | ) | |
| _____ | ) | |

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS
PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT**

Plaintiffs A.P. Bell Fish Company, Inc., Southern Offshore Fishing Association, Inc., and

Gulf of Mexico Reef Fish Shareholders' Alliance ("Plaintiffs") hereby move for an award of

attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA").

## I.    STATEMENT OF FACTS

Plaintiffs challenged Amendment 53 to the Fishery Management Plan for the Reef Fish

Resources of the Gulf of Mexico and corresponding federal regulations promulgated by

Defendants National Marine Fisheries Service, et al. (the "Service").  Plaintiffs, members of the

commercial fishing sector, contended that the reallocation of red grouper fishing quotas under

Amendment 53 violated the Magnuson-Stevens Fishery Conservation and Management Act, 16

U.S.C. §§ 1801, *et seq.* ("MSA") and other statutes.  In a judgment entered on March 1, 2024, the

D.C. Circuit affirmed in part and reversed in part the district court's grant of summary judgment

for the Service, and remanded without vacating the Final Rule implementing Amendment 53 so

319243913.1

that the Service could further explain its economic methodology and the effects on its analysis of MSA National Standards 4 and 9, in accordance with the opinion of the circuit court filed on the same date. *See* ECF No. 53-1.

## II.     ARGUMENT

Under EAJA, "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).  Plaintiffs are entitled to recover the fees and costs incurred in this case because they are eligible and prevailing parties, and the Service's position was not substantially justified. The fees and costs Plaintiffs request are reasonable and in line with similar cases.

This Court has jurisdiction to award Plaintiffs their reasonable fees and costs. *See* 28 U.S.C. § 2412(d)(1)(A) (authorizing "a court" to award fees); *e.g., Autor v. Pritzker*, 843 F.3d 994, 996 (D.C. Cir. 2016) (after D.C. Circuit reversed and remanded the judgment of the district court, plaintiffs filed a motion for fees in the district court).

### A.  Plaintiffs' Motion is Timely.

EAJA requires a party seeking an award of fees and other expenses to file a motion "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B).  The "30-day EAJA clock begins to run after the time to appeal [the] final judgment has expired." *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991).  Appeals from a judgment of a circuit court to the U.S. Supreme Court must be filed within 90 days from the date of the circuit court judgment. S. Ct. R. 13(1). Accordingly, under EAJA, a party seeking fees and expenses pursuant to a circuit court judgment

has 120 days total to submit a fee application. *See Zheng v. Ashcroft*, 383 F.3d 919, 920 (9th Cir. 2004) ("We have interpreted 'final judgment' for EAJA purposes as the date on which a petition for certiorari would be untimely."); *Singleton v. Apfel*, 231 F.3d 853, 855 n.4 (11th Cir. 2000) ("In cases in which the final judgment has been rendered by a court of appeals, EAJA applications must be filed within 120 days of the day the court of appeals enters judgment."); *Sloan v. US Dep't of Housing and Urban Dev.*, 196 F. Supp. 2d 16, 19 (D.D.C. 2002) (stating that "the 30-day period [for an EAJA fee application] begins when the 90-day period for seeking certiorari before the Supreme Court lapses"). The D.C. Circuit in this case entered its judgment on March 1, 2024. The deadline to file a petition for certiorari expired on May 31, 2024, such that Plaintiffs then had until July 1, 2024, to file an application for fees. Plaintiffs' application therefore is timely.

### B. Plaintiffs are Prevailing Parties.

To qualify as a "prevailing party" under EAJA, "'(1) there must be a court-ordered change in the legal relationship of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief.'" *SecurityPoint Holdings, Inc. v. Transp. Sec. Admin.*, 836 F.3d 32, 36 (D.C. Cir. 2016) (quoting *Initiative & Referendum Inst. v. USPS*, 794 F.3d 21, 23-24 (D.C. Cir. 2015)). A court-ordered change in the legal relationship of the parties occurs where a party "secures a remand terminating the case and requiring further administrative proceedings in light of agency error . . . without regard to the outcome on remand." *Id.* at 36, 39. As for the third prong, a party obtains "judicial relief" where it prevails on an "important matter," even if the party "does not [receive] . . . all of the items it requested in its prayer for relief." *Ctr. for Food Safety v. Burwell*, 126 F. Supp. 3d 114, 121-22 (D.D.C. 2015) (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989)); *see also Wood v. Burwell*, 837 F.3d 969, 974 (9th Cir. 2016).

319243913.1

In *Wood,* the circuit court held that the plaintiffs were prevailing parties under EAJA where the district court remanded to the agency without vacating the rule at issue so the agency could consider evidence and objections to which the agency initially failed to respond. 837 F.3d at 972-73. The plaintiffs in *Wood* claimed that the Secretary of Health and Human Services violated the Administrative Procedure Act ("APA") by failing to consider certain evidence before approving a Medicaid demonstration project. *Id.* at 972. After granting in part plaintiffs' motion for summary judgment, the district court remanded the case to the Secretary to address deficiencies in the project's approval process, but without vacating the rule at issue. *Id.* at 972-73. After the agency reached the same conclusion on remand, the district court denied plaintiffs' EAJA fee petition on grounds that they were not prevailing parties given the ultimate outcome. *Id*. at 973. The circuit court reversed, holding that the plaintiffs were prevailing parties under such circumstances because the district court's remand to the agency "obliged [the Secretary] to consider the Wood plaintiffs' objections and evidence" and therefore "resulted in a judicially-sanctioned material alteration in the parties' relationship." *Id.* at 974 (citing *Carbonell v. INS*, 429 F.3d 894, 900 (9th Cir. 2005)). This was true even though remand was not "precisely the same character as the relief sought in the complaint." *Id.* at 975. Although the plaintiffs failed to obtain their "preferred form of relief (i.e., vacating the Copayment Rule)" the remand order nonetheless "serve[d] the goals of the claim" because it "require[d] defendants to do something they otherwise would not have been required to do." *Id.* at 975 (citing *Saint John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1059 (9th Cir. 2009)).

Similarly, in *Ctr. for Food Safety*, this Court granted a plaintiff's petition for fees under EAJA after the court issued a consent decree requiring the FDA to finalize a long-pending proposed rule. 126 F. Supp. 3d at 119. Because the FDA had for seventeen years neither

319243913.1

responded to comments nor issued a final rule, the plaintiffs urged the court to vacate the proposed

rule and declare that the FDA had violated the APA. *Id.* Although the resulting consent decree

did not vacate the proposed rule as plaintiffs had requested, the plaintiffs were nonetheless

"prevailing parties" under EAJA because the FDA's commitment to issue a final rule by a specified

date afforded the plaintiffs "judicial relief" on an "important matter." *Id.* at 122.

Here, Plaintiffs prevailed on their claim that the Service wrongly relied on a "discredited"

economic analyses in promulgating Amendment 53. *A.P. Bell Fish Co., Inc. v. Raimondo*, 94

F.4th 60, 62 (D.C. Cir. 2024). The Service violated the APA by arbitrarily and capriciously relying

on that discredited economic methodology, which also tainted the Service's assessment of

Amendment 53's compliance with the MSA's National Standards. *See id*. at 64-65 ("Throughout

the rulemaking the Fisheries Service relied on the challenged economic analysis" including "in

responding to comments that Final Amendment 53 complied with National Standards 4, 5 and 9.").

The D.C. Circuit remanded "the case" to the Service with instructions for the Service to

"further explain its economic methodology and the effects on its analysis of [MSA] National

Standards 4 and 9, in accordance with the opinion of the court filed herein this date." *See* ECF

No. 53-1. The circuit court's judgment terminated the case. *See* D.C. Cir. R. 41(b) ("If *the case* is

remanded, this court does not retain jurisdiction, and a new notice of appeal or petition for review

will be necessary if a party seeks review of the proceedings conducted upon remand.") (emphasis

added); *SecurityPoint*, 836 F.3d at 38 ("when a court remands a case based on agency error *without*

retaining jurisdiction, the case is terminated and the petitioner becomes a prevailing party without

regard to the outcome on remand"); *Autor*, 843 F.3d at 999  (distinguishing the remand of a case

terminating the court's jurisdiction with an "interim victory" like withstanding a motion to dismiss;

"In the former circumstance, the remand alone is sufficient to confer prevailing party status

because the district court had entered a favorable final judgment even though the plaintiff may not ultimately succeed before the agency on remand.").

As in both *Wood* and *Ctr. For Food Safety*, the fact that Plaintiffs requested vacatur but obtained remand does not foreclose "prevailing party" status. *See Wood*, 837 F.3d at 975; *Ctr. for Food Safety*, 126 F. Supp. 3d at 121-22; *cf. Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("[T]he prevailing party inquiry does not turn on the magnitude of the relief obtained."). Rather, because the Court remanded the action for the Service to reconcile the Final Rule implementing Amendment 53 with the previously discredited economic methodology on which it relied, Plaintiffs prevailed on an "important matter" sufficient to confer prevailing party status. *Ctr. for Food Safety*, 126 F. Supp. 3d at 122.

Plaintiffs acknowledge that the Court will "award only that amount of fees that is reasonable in relation to the results obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). In *SecurityPoint*, the court reduced the fee award by 20% because the court did not reach appellant's principal argument "to which it devoted much of its briefing," but remanded instead on the basis of argument that appellant made "cursorily" but which was related to other grounds for relief, and it was difficult to divide the hours expended on a claim-by-claim basis. 836 F.3d at 41. Here, by contrast, the D.C. Circuit agreed with one of Plaintiffs' main arguments that the Service improperly relied upon a discredited economic methodology, which affected the Service's conclusions about compliance with other requirements under the MSA that Plaintiffs also challenged. *See A.P. Bell*, 94 F.4th at 64. As in *SecurityPoint*, the Plaintiffs' successful and unsuccessful claims were related, and it is difficult to apportion the litigation efforts on a claim-by-claim basis. Therefore, in this case, Plaintiffs contend that a 10% discount off the total fees incurred is warranted.

### C. **Plaintiffs are Eligible Parties.**

To be a "prevailing party" under EAJA, a party must also meet certain eligibility thresholds. An eligible party under EAJA is "any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B).

Filed herewith are declarations from each one of the three Plaintiffs in this case, establishing the existence of a fee arrangement whereby Southern Offshore Fishing Association, Inc., and the Gulf of Mexico Reef Fish Shareholders' Alliance—both eligible under EAJA as not-for-profit corporations with a net worth less than $7 million and fewer than 500 employees—agreed to be solely responsible for all fees and costs incurred in this case.  Declaration of Eric Brazer at ¶ 3; Declaration of Robert Zales at 3; Declaration of Karen Bell at ¶ 2.  "[W]here the fee arrangement among the plaintiffs is such that only some of them will be liable for attorney's fees, the court shall consider only the qualification *vel non* . . . of those parties that will be themselves liable for fees if court-awarded fees are denied." *Unification Church v. INS*, 762 F.2d 1077, 1082 (D.C. Cir. 1985).  Because the two trade associations who agreed to pay all the fees are both eligible under EAJA, the eligibility of the remaining Plaintiff, A.P. Bell Fish Co., Inc., is irrelevant and has no bearing on the amount of the Court's award.  *See id.*; *Taucher v. Rainer*, 237 F. Supp. 2d 7, 15-16 (D.D.C. 2002) (rejecting defendant's request to reduce EAJA award in proportion to the number of ineligible plaintiffs); *see also Taucher v. Rainer*, 292 F. Supp. 2d 111, 119-22 (D.D.C. 2003) (same), *rev'd on other grounds sub nom Taucher v. Brown-Hruska*, 396 F.3d 1168 (D.C. Cir. 2005).

319243913.1

**D. The Service's Position Was Not Substantially Justified.**

A prevailing party is entitled to fees and expenses unless the government's position was "substantially justified." 28 U.S.C. §2412(d)(1)(A). The government bears the burden of proving its position was substantially justified. *Scarborough v. Principi*, 541 U.S. 401, 414 (2004). A position is substantially justified if it is "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). By contrast, a position is not substantially justified when it lacks a reasonable basis in either law or fact. *See LePage's 2000, Inc. v. Postal Reg. Comm'n*, 674 F.3d 862, 867 (D.C. Cir. 2012) (agency action taken in a "slapdash manner" and that contradicted prior position was not substantially justified); *F.J. Vollmer Co., Inc. v. Magaw*, 102 F.3d 591, 596-97 (D.C. Cir. 1996) (agency action with no basis in the relevant statutory text was not substantially justified); *Cooper v. U.S. R.R. Ret. Bd.*, 24 F.3d 1414, 1417 (D.C. Cir. 1994) (agency action "wholly lack[ing] a reasonable factual basis" was not substantially justified); *Lake Pilots Ass'n, Inc. v. U.S. Coast Guard*, 310 F. Supp. 2d 333, 340-41 (D.D.C. 2004) (agency action based on inaccurate data, *post hoc* rationalizations, and that failed to adhere to the language of its own regulation was not substantially justified); *see also Taucher*, 396 F.3d at 1174 (distinguishing between a position "flatly at odds with the controlling case law" and one based on an "unsettled question").

Plaintiffs contend that the Service's position was not substantially justified. *See* 28 U.S.C. § 2412(d)(1)(B).[1] The Service's position was not substantially justified because it relied on a discredited economic analysis the Service itself had recently rejected in a prior amendment to the same fishery management plan. *See A.P. Bell*, 94 F.4th at 64. The D.C. Circuit rejected the purported distinction put forth by the Service, finding it a "distinction without a difference." *Id.*

---

[1] Plaintiffs' contention is sufficient at this stage to shift the burden to the Government to prove that its position was substantially justified. *See Scarborough*, 541 U.S. at 416.

"Nowhere in the record has the court found an explanation by the Fisheries Service of how an invalid methodology is any better at comparing the net benefit of options than calculating a maximum net benefit. Nor did questioning during oral argument prove illuminating." *Id*. The position the Service took in this case was not justified because it lacked any logical basis and directly conflicted with its prior position.

Further, the Service must demonstrate the reasonableness "not only of its litigation position, but also of the *agency's* actions." *SecurityPoint*, 836 F.3d at 40 (internal quotation and citation omitted). In *SecurityPoint*, the court found that the agency's "indifference" to, and lack of "engagement" with, the plaintiffs' arguments during the rulemaking process went "sufficiently beyond ordinary 'arbitrary and capricous' agency action to qualify as lacking substantial justification." 836 F.3d at 40.

Here, the Service informed the public during development of Amendment 53 that the supporting economic analysis was "standardized" and "consistent" with prior methods used by the Service. ECF No. 43-4 at 838-839 (pages 4034-4035 of the Administrative Record ("AR"), containing transcribed remarks of the Service's Regional Administrator). In response to Plaintiffs' comments that the economic analysis for Amendment 53 was "discredited" and in direct conflict with Amendment 28, *see* ECF No. 43-14 at 322-324 (AR 9900-9902), NMFS responded that Plaintiffs had a "misunderstanding of statements in Amendment 28" and that "the economic analysis in Amendment 53 does not conflict with the analysis in Amendment 28." ECF No. 43-18 at 505 (AR 17432).

The Service's assertions were clearly incorrect, as the D.C. Circuit recognized. *A.P. Bell*, 94 F.4th at 64. The outcome of Amendment 53 may have been different, and this litigation avoided, if the Service had been forthright with the public from the outset that the economic

319243913.1

analysis supporting Amendment 53 was indeed "discredited" and "invalid," and that the Service "had rejected [it] in adopting" a prior amendment to the same fishery management plan. *Id*. at 62, 64.

The Service's position in this case was far less justifiable than the agency's position in *SecurityPoint,* 836 F.3d at 40. The Service did not merely show indifference and lack of engagement with the Plaintiffs' arguments, its responses to those arguments were misleading and factually incorrect. Thus, *a fortiorari*, the Service cannot demonstrate that its position here was substantially justified.

### E.  **Plaintiffs Request Reasonable Attorneys' Fees and Costs.**

After deducting potentially non-compensable billings, Plaintiffs seek fees for a total of 713.80 hours of attorney time, which included work to prepare and file the complaint, establish a case schedule and address other preliminary matters, review the administrative record, prepare summary judgment briefing and argument, prepare the Joint Appendix, file the notice of appeal, prepare appellate briefing and argument, and prepare this fee petition.

To calculate the requested fees, Plaintiffs used adjusted statutory EAJA rates of $370.15 for 2022, $381.65 for 2023, and $391.14 for 2024.  EAJA provides a presumptive cap of "$125 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii).  "Because the statutory cap was set years ago, in 1996, courts routinely approve cost-of-living adjustments." *Carey v. Fed. Election Comm'n*, 864 F. Supp. 2d 57, 64 (D.D.C. 2012) (citing *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 969 (D.C. Cir. 2004)).  Plaintiffs accordingly request a cost-of-living increase in the statutory rate as set forth below.

319243913.1

"[T]he D.C. Circuit has concluded that the best estimate of this broader metric is the increase of the cost of all goods and services in the Washington, D.C. area." *Makray v. Perez*, 159 F. Supp. 3d 25, 55 (D.D.C. 2016). Case law provides that the adjusted EAJA rate is based upon the change in average regional Consumer Price Index ("CPI"). *See Haselwander v. McHugh,* 797 F.3d 1, 3 (D.C. Cir. 2015) (relying on formula "dividing CPI-U in the year services were rendered by the baseline of 100. The resulting multiplier is then applied to the statutory rate of $125 to determine the adjusted hourly rate"). The rates for this fee application were calculated using the formula in *Haselwander* and the average regional CPI for the Washington, D.C. - Baltimore area for years 2022 - 2023[2] and the first five months of 2024.[3] This formula ($125 x CPI-U / $100) produced the following results:

**2022 Adjusted Rate**:  $125 x 296.117 / 100 = $370.15

**2023 Adjusted Rate**:  $125 x 305.317 / 100 = $381.65

**2024 Adjusted Rate**:  $125 x 312.912 / 100 = $391.14

Using these rates, the breakdown of hours and fees by timekeeper for which Plaintiffs are seeking recovery at this time is as follows (*see* Hobbs Decl., ¶ 4):

| Attorney Name | Hours Billed as Reflected at Exhibit A | Total Value at Adjusted Statutory EAJA Rates 2022 – $370.15 2023 – $381.65 2024 – $391.14 |
|---|---|---|
| Barry Hartman | 2022: 4.60 | 2022: $1,702.69 |

---

[2] *See* U.S. Dept. of Labor, Summary of Annual and Semi-annual Indexes, available at https://www.bls.gov/regions/mid-atlantic/data/consumerpriceindexannualandsemiannual_table.htm (last visited June 3, 2024).

[3] *See* U.S. Dept. of Labor, Consumer Price Index Historical Tables for Washington-Arlington-Alexandria, DC-VA-MD-WV, available at https://www.bls.gov/regions/mid-atlantic/data/consumerpriceindexhistorical_washingtondc_table.htm (last visited June 13, 2024). The average CPI for the first five months of 2024 was calculated using figures from January-February (309.961), March - April (313.108), and April - May (315.667).

| (Partner) | | |
|---|---|---|
| Derek Kalbfleisch (Associate) | 2024: 4.10 | 2024: $1,517.62 |
| J. Timothy Hobbs (Partner) | 2022: 272.20<br>2023: 129.90<br>2024: 21.70 | 2022: $100,754.83<br>2023: $49,576.36<br>2024: $8,487.74 |
| John L. Longstreth (Partner) | 2023: 20.70<br>2024: 0.70 | 2023: $7,900.16<br>2024: $273.80 |
| Layne Marler (Paralegal) | 2022: 6.10 | 2022: $2,257.92 |
| Ruby Nagamine (Associate) | 2022: 4.80 | 2022: $1,776.72 |
| Natalie Reid (Associate) | 2022: 34.70<br>2023: 138.10 | 2022: $12,844.21<br>2023: $52,705.87 |
| Michael F. Scanlon (Partner) | 2022: 21.90<br>2023: 17.90<br>2024: 0.80 | 2022: $8,106.27<br>2023: $6,831.54<br>2024: $312.92 |
| Palmer Smith (Associate) | 2024: 14.40 | 2024: $5,632.42 |
| David Wang (Associate) | 2022: 18.10<br>2023: 3.10 | 2022: $6,699.72<br>2023: $1,183.12 |
| **TOTALS** | **713.80** | **$268,563.91** |
| | **Less 10% Discount** (see section II(B)) | **$241,707.52** |

The hours billed in this litigation are reasonable in light of the work performed, and Plaintiffs' requested fees are in line with those paid as a result of settlement or litigation of other EAJA fee petitions. *See*, *e.g.*, *Oceana, Inc. v. Raimondo*, 3:19-cv-3809-VC (N.D. Cal. 2022) ($305,000 settlement); *Flaherty v. Blank,* No. 1:11-cv-00660-GK (D.D.C 2013) (fees sought for 1,272.65 hours billed in a case involving a smaller record, settled at $168,246.07 when EAJA fees were capped at far lower rates); *Cal. Res. Agency v. Dept. of Agric.*, No. 3:08-cv-01185-MHP (N.D. Cal. 2010) ($250,000 settlement); *Wilderness Soc. v. United States Forest Serv.*, No. 3:05-cv¬3508 (N.D. Cal. 2010) ($500,000 settlement); *Turtle Iland Restoration Network v. Nat. Marine Fisheries Serv.*, No. 1:11-cv-01813-ABJ (D.D.C. 2012) ($60,350.00 settlement just for time spent preparing the complaint); *Assoc. of Am. Physicians and Surgeons, Inc. v. United States Food and*

*Drug Admin.*, 391 F. Supp. 2d 171, 181 (D.C. Cir. 2005) (court awarded $378,017.45); *Fed. of Fly Fishers v. Daley*, 200 F. Supp. 2d 1181, 1193 (N.D. Cal. 2002) (court awarded $310,973.81).

Finally, Plaintiffs are also entitled to recover the reasonable costs incurred in this litigation of $11,670.22 (*see* Hobbs Decl., ¶ 5). "Items routinely billed to a client are recoverable under the EAJA." *Nat'l Assoc. of Mfrs. v. U.S. Dep't of Labor*, 962 F. Supp. 191, 199 (D.D.C. 1997), *aff'd*, 159 F.3d 597 (D.C. Cir. 1998). The reasonable cost "of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case" also may be recovered. *See* 28 U.S.C. § 2412(d)(2)(a). Plaintiffs seek recovery for: (i) $10,000 in fees for an expert economist to prepare a report and advise on Plaintiffs' ultimately successful economic arguments; (ii) $1,268.22 in legal research charges; and (iii) $402 for the fee to file their complaint in this Court (*see* Hobbs Decl., ¶ 5). These costs are similar to costs deemed reasonable in other cases. *See Cobell v. Norton*, 407 F. Supp. 2d 140, 164 (D.D.C. 2005) (allowing reduced recovery of expenses for accounting and litigation consultants); *Am. Wrecking Corp. v. Sec. of Lab.*, 364 F.3d 321, 328-29 (D.C. Cir. 2004) (allowing reduced recovery of expenses for non-attorney consultants retained in connection with engineering survey citation); *Role Models*, 353 F.3d at 975 (awarding $9,448.89 for computer-based research charges); *Hirschey v. FERC*, 777 F.2d 1, 6 (D.C. Cir. 1985) (awarding computer research charges); *National Ass'n of Mfrs.*, 962 F. Supp. at 199 (same); *see also Mass. Fair Share v. Law Enf't Assistance Admin.*, 776 F.2d 1066, 1069-70 (D.C. Cir. 1985) (copying expenses compensable); *Cooper*, 24 F.3d at 1419 (same).

## III.    CONCLUSION

Plaintiffs respectfully request that the Court find that they meet the statutory requirements for an award of fees and costs under EAJA and that the Service's position was not substantially

justified, and award Plaintiffs $241,707.52 in fees and $11,670.22 in costs as requested herein,

plus any additional fees and costs incurred in further litigating this petition.

Respectfully submitted,

J. Timothy Hobbs, D.C. Bar No. 976470
K&L GATES LLP
501 Commerce St., Suite 1500
Nashville, Tennessee  37203
Telephone: +1 615 780 6700
Facsimile: +1 615 780 6799
tim.hobbs@klgates.com


Michael F Scanlon, D.C. Bar No. 479777
K&L GATES LLP
1601 K Street, N.W.
Washington, DC 20006
Phone: +1 202 778 9000
Fax:  +1 202 778 9100
michael.scanlon@klgates.com

*Attorneys for Plaintiffs*


June 27, 2024

319243913.1